Good morning, Counsel. Good morning. May it please the Court, Kent Young, Federal Defenders, on behalf of Mr. Esparza. I'll begin by addressing the hearsay issue. Over Defense Counsel's hearsay objection, the District Court permitted the government to admit an out-of-court statement from Diana Hernandez alleging that Hernandez's vehicle, which contained 45 kilograms of marijuana, was sold to Mr. Esparza six days before agents discovered marijuana in the vehicle. Now, Hernandez made this out-of-court statement more than one month after agents discovered marijuana in the vehicle and only after receiving a notice from Vines Penalties and Forfeitures that the vehicle was subject to forfeiture because it, quote, contained 50.12 kilograms of marijuana, unquote. And the District Court found that this was admissible under three separate hearsay exceptions, only two of which are at issue here between the parties. And the admission of this evidence was both improper and it wasn't harmless. As to the first hearsay exception relied on by the District Court, the District Court found that it fell within the Public Records Exception 8038 as a statement of a public office that sets out a matter observed while under a legal duty to report. And the District Court's finding that Hernandez's statements as a private citizen could fall within the Public Records Exception is contrary to more than 30 years of case law from this circuit, which holds that the Public Records Exception doesn't apply to statements made by private parties. There's three cases that have come up in the course of the briefing here, United States v. Yin, United States v. Morales, and United States v. Marguerite Piatto. And in all three of those cases, particularly Marguerite Piatto and Morales, this Court held that statements made by private parties did not fall within the Public Records Exception. As to the second exception relied on by the District Court, Federal Rule of Evidence 80315, Statements in Documents Affecting an Interest in Property, Hernandez's statement did not fall within that exception either because the release of liability form did not actually affect a property interest in this case. Under California law, a party obtains a property interest in a vehicle in one of two ways, through the transfer of equitable title or the transfer of legal title. And as we pointed out in our briefing, the transfer of liability document didn't establish an interest, either equitable or legal title. And, of course, there's also another reason why this stuff shouldn't fit within 80315, and that is that for a document or an out-of-court statement to fall within 80315, it must also be trustworthy. And 80315 under the express text of the rule doesn't apply if later dealings with the property are inconsistent. Kagan. I think it depends on how you define affecting an interest in property. But let me ask you this. Is there a Crawford problem here? Can you address that? Yes. Our position is that Hernandez's statements also were testimonial because under the objective test as laid out in Morales, an objective person in Hernandez's situation, after receiving that notice from the Department of Homeland Security, informing her that the vehicle was subject to forfeiture because it contained 50.12 kilograms of marijuana, an objective participant in Hernandez's situation would assume that her statements would be used later at trial. So purportedly, Ms. Hernandez sold this car some days, five or six days, before the defendant, Mr. Esparza, brought it across the border, but she didn't send in the notice of transfer until she was notified by the government that the car had been seized and that a substantial quantity of drugs had been found in the car. Yes. That's exactly right. That's exactly right. Excerpts of record 687, we have the notice of seizure which she received. And so she only ---- So is it your position that the seizure notice turned what perhaps we might agree would otherwise be official record into testimonial evidence? Yes. Is that the key to your argument? I think that is the key to the Confrontation Clause issue. So if she had turned it in timely, within five days, as the form suggests, or if it was unrelated to the notice, it would be okay? That's correct. Had she not made this statement after learning that it was seized with 50.12 kilograms of marijuana ---- Did anyone try to offer the transfer of title document, an actual transfer of title to the automobile? Was that at all discussed or ---- There's no evidence in the record that she ever submitted a transfer of title document to the California Department of Motor Vehicles. And, in fact, what's interesting in this case is it came out during the course of the trial is that Department of Homeland Security agent Jeffrey Richardson, who was called by the defense, actually interviewed Diana Hernandez. And she said that she gave this vehicle to her boyfriend, Felipe Sanchez Escobedo, to sell. And then Richardson also interviewed Felipe Sanchez Escobedo. And he testified that Felipe Sanchez Escobedo said that he sold the vehicle to Ricardo Dominguez Morales, not Mr. Esparza. And this is testimony coming from the Department of Homeland Security. Now, if Diana Hernandez had testified, you wouldn't have a problem either, right? That's correct. We wouldn't have a Confrontation Clause problem. She was subpoenaed by the government, yes? That's exactly right. She was subpoenaed by the government. Does the record reflect why she did not testify? It does not. On the second day of trial, the government stated that it would not call her as a witness, but we don't know why. Did the defendant have the opportunity to cross-examine other people about the accuracy of the document, the validity of the document, the veracity of the document? No. No. That's correct. We did not have the opportunity to cross-examine any other individuals. Nobody talked about the document? It was just plopped into evidence? It did come up. There were two separate documents where these statements appear. There's the actual Transfer of Liability document, which came up. They go hand-in-hand? It's exactly right. The first was offered in the prosecution's case-in-chief, I believe, through the case agent or it was the Department of Homeland Security agent. Was he cross-examined? He was, yes. About the document? Yes, he was, I believe. So there was an opportunity to test the accuracy of the document? Well, he wasn't the actual custodian of record, and he wasn't – I mean, he wouldn't actually – we're dealing with statements by Diana Hernandez. He wasn't Diana Hernandez, obviously. But the jury knew when this document was prepared by her, how she sent it in, that it followed the notice of seizure, et cetera, et cetera, all the holes you want to poke into it as the defendant. Well, that's true. Those arguments were made to the jury. But if you – I think the reason why this was particularly prejudicial is if you look at the government's closing argument. And just to give you an example of some of the statements the government made, this is in the government's closing, excerpts of records 649 to 650. The government told the jury it was the defendant's vehicle. So how do we know that? How did the United States prove that this was the defendant's vehicle? We brought – we have documents, release of liability paperwork that shows that this defendant, and his name is listed, that he purchased this vehicle from Diana Hernandez on February 13th, 2011. But ownership wasn't their only argument, right? It wasn't. But the only element in dispute was the element of knowledge. And the government said in its closing to the jury that this was key on the element of knowledge, because it showed that. It's linking knowledge to the fact that the vehicle had been purchased by Mr. Esparza. That's the problem, is your theory. Exactly. That he has ownership and control over the vehicle six days before it sees that it makes it much more likely to be. Was there not other evidence that the government offered about knowledge aside from ownership? There was. The value of the marijuana, the placement of the marijuana, the border crossing history, the unbelievability of the defendant's other witnesses, those all went to his knowledge. There is. Irrespective of ownership. There is. But while we're on the topic of harmlessness, there's two key cases that we've cited in our briefs that I think are very important to this. United States v. Liera and United States v. Foster. Those are both cases arising from the Southern District of California. One was an alien smuggling case. The other one involved smuggling of narcotics. And they were both assessed under the standard, the more probable than not standard for harmlessness for non-constitutional errors. In Liera, you had a case where the defendant was found driving a truck that didn't belong to him, and there were two undocumented aliens underneath the hood of the truck, and he was charged with alien smuggling. And the fact there were two aliens hiding in the truck would seem to suggest pretty compelling evidence of knowledge. But nevertheless, this court found that the statements that the defendant made about poyos, which was supposedly slang for undocumented immigrants or, as the defendant claimed, chickens, that that was prejudicial, even though it wasn't a confession of guilt. And in Foster, you had a case where it was a marijuana seizure at the border. The defendant was the driver and sole occupant of a vehicle that didn't belong to him, just like Mr. Esparza. And in that case, the government was permitted to impeach the defendant with his prior conviction for possession or receipt of stolen property. And this court held that the error wasn't harmless, and this is at 227 F. 3rd, 1096. Finally, we note that the Mazda exhibited no visible signs of alteration, and the sole evidence linking Foster to the marijuana was that he was driving the car in which it was hidden. Unless Foster had actual knowledge of the marijuana hidden in the car, which he testified he did not, a visual inspection of the car would not have alerted him to the drug's presence. The marijuana was hidden underneath and behind the back seat, inside the passenger and driver's side panels, and inside the near bumper, all of which are natural compartments or compartments that exist at the time the car is manufactured. Under these circumstances, even the inspector who found the marijuana testified that he could not tell without a thorough research of the car if the marijuana was present. And so in that case, the court held that it wasn't harmless because it undermined his account of what happened. And that was one of the reasons why, even though there was this fanciful story or a somewhat difficult story to believe in that case. And I think the same problem really happened here. You have an account by the defense of, the defense actually put on a case here. Even though Mr. Esparza didn't testify, there was a whole account of how the vehicle was actually transferred. The defense's version was that this went to Ricardo Dominguez-Morales. It was sold to him. He borrowed the vehicle from Ricardo Dominguez-Morales. And allowing the government to put in this evidence undermined the defense case in the same way that it did with Foster, the improper evidence there. It undermined Foster's testimony. And here, this undermined the defense case as well. So I certainly think it wasn't harmless. With regard to 803.15, I just, I know, I don't think I specifically cited this case in my brief, but as a general rule, it's when a, the rule, federal rules of the United States, and when the rule's unclear, we look to commentary. And I think the commentary, let me just give you the site for that. The, should be, it's United States versus Osazua, 564 F3rd 1169, 1173 to 74, 9th Circuit, 2009. This is just for the general proposition that you look to commentary when interpreting the rule. It's that, quote, we interpret the legislatively enacted federal rules of evidence as would any statute. We begin by the text. And when it's ambiguous, then you look to the commentary. And I think here the commentary clearly provides that that rule applies to dispositive documents. And the government acknowledges in its briefing this was not a dispositive document. So I think it's certainly clear under the commentary that this rule should not Can I take you on a different direction before your time is up? And I want to talk for just a second. I'm having my district court head on now. With respect to the three years of supervised release, I'm curious. The presents report in the opening paragraph talks about 50 kilograms. There was an amendment or a stipulation at trial that it was 48 kilograms, which has a significance with respect to what is the mandatory term of supervised release. And yet, is there anything in the record at the time of sentencing where anyone, the judge, the lawyers for both sides, the probation officer, somebody said, wait a minute. It's not a mandatory three. And I looked at the judge's comments. He doesn't say that it's a mandatory three. He sort of follows the recommendation of probation and gives three. But I'm having trouble finding why nobody said something. Yes, Your Honor. I see my time is running near. I'd like to reserve a minute for rebuttal, if that's okay. I also want to answer your question. So that's exactly right. The government and probation, probation said that it was 50.12 kilograms of marijuana and represented on three separate occasions in the PSR that the district court was required to impose the minimum mandatory term of three years as required for 50 kilograms. Even though the party stipulated it was 45. And, of course, that raised problems under a lien. So let me cut to the chase. Did anybody say anything? No. Nobody said anything. And this sentencing happened six months after the jury trial. And I think the problem is, I know, Judge Hurry, you're a district court judge. You probably see many cases going on. The idea that the district judge in this case would have remembered half a year previously that in the middle of trial or towards the end of the government's case-in-chief, there was this stipulation in which the parties ---- Oh, let's not fault the judge, but how about the lawyers? Yes. You're right. The lawyers should have said something. Yes. Right. But in all seriousness, quickly, the flip side is he never said this is mandatory. He never said. And under plain review, kind of hard to say that's error, isn't it? Well, let me give you a case citation that might help on this. It's Hammons. It's 558 F. 3rd, 1100. And that's a 2009 Ninth Circuit case where the PSR had an incorrect criminal history category. There was no objection of the PSR. And this Court found that the district ---- and the district court in that case also didn't calculate the guidelines. So it was unclear the district court even relied on the criminal history category in the PSR. But nevertheless, this Court found that there was plain error in that case. And I think Hammons may be helpful in resolving that issue. All right. You're over time, but I'll give you a minute for rebuttal or questioning took you over your time. Let's hear from the government. May it please the Court. Benjamin Hawley for the United States. Mr. Esparza's arguments here are best directed to the weight to be given the evidence rather than its miscibility, which is what the district court found. The parties had a differing view in terms of the DMV documents on how the car got from Ms. Hernandez to Mr. Esparza. Do you disagree that this was testimonial? I do disagree. It was not testimonial. What about the timing? Can we ignore that? I mean, this was all in her self-interest to send that form in once she got notice about it, and she didn't testify. That's correct. She did not testify. However, it's not testimonial because this Court in Berry and quoting and analyzing the Supreme Court in Bullcoming indicates that something, a statement is testimonial if and only if it's solely for an evidentiary purpose. Well, Berry is very different because Berry involved an SSA application prepared by a Social Security interviewer, and there we said that this was part of a routine administrative process. There was no criminal investigation underway. The facts here are completely different. She could have sent in the notice of transfer at the time of sale, didn't. Right. What would a reasonable person's reaction be if you get a notice from the government indicating that your vehicle had been seized because 45 kilograms of marijuana had been found in the vehicle? Would you be worried about some potential criminal exposure in that case? I think someone could be concerned about the fate of their car and what's going to be happening from there on out. Right. So if a reasonable person could be concerned about potential criminal liability and sends in a notice saying, hey, that's not my car anymore. I sold it to this guy, do you think that that's an attempt to exculpate herself from any potential exposure to liability? No, because the person who would be responsible is the driver, whoever, the people involved with the drugs. Merely being the registered owner would not in itself give rise to liability. But moreover, this Court also talked about the primary purpose that a document would serve. So even if it might be used in a later litigation, and that was this Court's decision in Morales, it doesn't automatically render it testimonial. We said, look, what's the purpose of the document? Here this is required that she file. What was the theory that it was admitted on? I'm sorry, I don't understand. On what theory was it admitted? As a business record? Oh, I'm sorry, as a public record and as a statement affecting an interest in property, those two hearsay exceptions. And so the Court, because the primary purpose of this is to change the property ownership, the liability ownership for that vehicle, the fact that it could be used 16 months later, as it turned out in a trial, is something relevant and something the Court considered, but is not in and of itself sufficient to change it to a testimonial statement or render it testimonial. Remind me if there was a discussion with the district court on any confrontation clause concern. There was. When the objections were made by Mr. Esparza, it was both under hearsay and Crawford, the testimonial objections, yes. And at that time, that discussion took place. Was she on the witness list to testify at trial? Correct. She was expected to testify, as counsel indicated, the morning of the second day of trial. Government counsel said essentially to speed up the trial. We're not calling her. On we go. Why pursue this theory and be here now so vigorously, as your opponent suggests? You fought it pretrial. You mentioned it in your closing. There had to be some indication, especially once the decision was made that she wasn't going to testify, that you placed yourself in a precarious position. And unfortunately, that's not in the record as to why that decision was made. Were you the trial counsel? I was not, no, Your Honor. There were two trial counsels. I was wondering the same thing. This was a big part of the closing argument, linking the knowledge to the fact that he purchased the vehicle. Given that that knowledge is a critical issue in all of these types of cases, I just wonder why the government would go through this instead of calling the witness. That's why they sent you. I certainly understand the Court's concern. Because you were arguing, whoever it was, was arguing that this was true. Yes. And the government does believe. I mean, the car obviously went from Ms. Hernandez to Mr. Esparza. Now, the route it took, who it went through, the parties disagreed on. And that's exactly the type of information we want a jury to weigh. That's why we bring the jury in, to decide which one is true. Here, the jury decided that Mr. Esparza had the car, had an interest in the car. Nobody placed an interrogatory to the jury that might have saved the day by saying, do you find that he was the owner of the car? They could have found him guilty without being the owner of the car.  But we don't know here on what basis they found him guilty. That's true, though the government was focusing much more. It did mention, and I don't want to overstate, or rather understate, that it was used in closing. Because the government did talk about this in their case, did talk about it in closing. That said, it was but one piece of several pieces of evidence showing his knowledge. And only one of the pieces of evidence showing his interest in the car. There's obviously that he was in the car. He was the sole occupant driving the car, both that time and a previous time. And that he was the sole driver on February 3rd, which is about six weeks in progress. Right. He had a defense theory, and actually put on evidence in this case, that he had borrowed the car from somebody who, I forget the exact sequence. He borrowed the car from a guy who had some connection to Ms. Hernandez's boyfriend. My understanding is the defense's theory was that Ms. Hernandez transferred it to her boyfriend, Felipe Sanchez. He then at some point gave it to his boss, Ricardo Escobedo, I believe was his name, who then sold it to the boss's friend, a man named, I believe it was Kinney. And that person loaned it at some point to Mr. Esparza, I think was the chain. So he was trying to articulate this theory that explained why he might have been driving the car on that date. And so that theory essentially was gutted by a statement from the person who, with the DMV's registered owner, saying, oh, no, I sold it to this guy. There were actually many problems with his testimony. That was one part of it. The government aggressively cross-examined Felipe Sanchez, who the defense called, and he had any number of inconsistencies independent of the document in terms of dates, how he transferred it, when he transferred it, who was filling out any paperwork about the transfer, there were a large number of holes in his testimony. And using the documents was certainly part of the cross-examination, but it was not, even absent that, he had a number of holes in his story. Was there any evidence of any contact between Diana Hernandez and the defendant, how they met, if they met, if they talked, how this was totally silent on any connection between those two people? I believe that's true, yes, Your Honor. I'm still trying to figure out the Crawford stuff, right? It's testimonial if it's made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Tell me why that doesn't apply to Ms. Hernandez's statement in this case. Because I think this Court, and, again, interpreting the Supreme Court, has also said that you need to look to a document's primary purpose. It's purely because it can be or is used in trial does not automatically render it testimonial. So this case, it could have been used in trial, and as it turns out, was used in trial, but that by in and of itself would not render it testimonial. And when we look at primary purpose, I know the government relies on the nature of these type of documents that look, these are routinely sent to the DMV. Do we look at that, or do we look at what is the witness's primary purpose? Did she anticipate that this would be used in a later criminal proceeding or court proceeding? How should we analyze the primary purpose, in your view? I think the Court actually in this case could do both, because the primary Mrs. Hernandez was required to fill out and send in this document, again, independent of any criminal prosecution. Whether there was a criminal prosecution or not, that document needed to be filled out. But that doesn't get a lot of traction with me, because she didn't fill it out. She didn't think it was important to send it in. It wasn't until she got notice from the government that 45-plus kilos of narcotics was found in the vehicle that she rushed to send it in. So shouldn't we look at what was her motivation and what a reasonable person's purpose would be in sending in this document? Does that make more sense? I think two responses to that. First, in terms of the timing, it certainly, as Your Honor points out, appears that she received this notice, and therefore, you know, then sends in the document. But that's all we have is this timing. This is also a relatively short amount of time. This would be, I think, a different case, and Mr. Esparza's argument would be much stronger if she said she sold the car a year prior, then gets the notice, and then sends it in. Here, we're all talking about within the space of a month. So she's outside the five days that she's required to send it in, but not by very much. Second, the reason we look at public records and evidence such as this is that the DMV is relying on this. That doesn't mean that any information the DMV gets is automatically accurate or true. Well, that's true, but you did play that role here, didn't it? I mean, that's what I was asking you before. You were arguing that this was true, this was evidence in support of prosecution. We argued, yes, that it was true that he, the vehicle had been transferred. That he was the owner, yes. That it had been transferred to him before he obviously crossed in it on February 19th. Correct? The Crawford Supreme Court's case requires us to look at this through the eyes of the declarant. Here, the declarant is Diana Hernandez. It talks about whether the declarant would reasonably expect it to be used prosecutorily. You lose on that, don't you? Even if we do lose on that, I don't believe so for the reasons I've just said. Right. But even if we do, we still have obviously the harmlessness argument, which I can address. Well, let's talk about harmlessness. Government's closing argument, it was the defendant's vehicle. How do we know that? How did the United States prove that it was the defendant's vehicle? We brought, we have documents, release of liability paperwork. Let's look at that paperwork. He bought this car from Diana Hernandez, and that establishes knowledge. Why is that harmless? Because there were at least two other ways that the government proved Mr. Esparza had that car and had an interest in that car. And independent of his knowledge or his control of the car, there's the value, and what they spent the most amount of time on in closing, and for that matter, during testimony, was the expert's opinion about how long it would take to modify the car, then get the drugs out, how it would affect the drivability, that anyone driving it would be very much on notice that something is very wrong with the car. Well, there's something already wrong with the car. It was 13 years old with 138,000 miles on it. So, seriously, can you put yourself in that Lumina, which no longer is being manufactured, and say to yourself, with all those miles and et cetera, gee, there's something funny here? Yes, because of the extent of the modifications. It's not merely that it would run a little rough or something along those lines. There was a hole in the firewall, so there would be air blowing in, and it would change, the engine smells would be coming in. The expert testified it was a, I believe, four-inch by five-inch hole, which in addition to the gas gauge would have been wildly inaccurate because there was only five gallons usable in the tank in addition to only one gallon actually in the car itself to get from San Ysidro all the way up to somewhere in San Diego that he was going. I drove a car once when I was much younger where the gas gauge was completely broken. Always had to guess and keep track of how long you'd driven. Let me have you touch on the sentencing issue for a moment before you run out of time. Pretty clearly erroneous that everybody pretty much forgot about the fact that there was a stipulation to less than what's charged in the indictment? Someone absolutely should have mentioned that during the sentencing, but I think the key here is that Mr. Esparza did not object to it, and that's the problem. Had Mr. Esparza said through counsel, you know, why is the Court imposing three years, that's not the mandatory minimum, or we object, you know, on the reasons that you're imposing that, then we could have reviewed it, the Court could have reviewed it. And that's exactly why this Court imposes plain error review is so those problems can be solved on the front end, and we're not here all assuming and guessing what the district court was doing and thinking. The best that can be said is that the district court fully explained its rationale for a sentence, which I think both parties agreed. It just didn't separate out, here are the reasons I'm giving 24 months custodial, here are the reasons I'm giving three-year supervised release. Instead, it explained its rationale and said, based on all of that, I'm imposing the following sentence. Also, I would note that to the extent that the PSR provided probation recommended a certain sentence, which was far above the 24 months that the district court imposed. So this isn't a situation where the district court is just blindly following probation's recommendation. In fact, he even says that it came well below what probation wanted, what the government wanted in imposing the sentence. And sometimes district judges will go lighter in the sentence and heavier on supervised release. Exactly. It's almost like a compensation, yes. Unless the Court has any further questions. Since I've got a minute, let me tell you what I'm struggling with. Certainly. My colleagues don't mind. I'm struggling with the harmless error here and the evidence and the two theories and whether the argument the government made on ownership is one that requires a reversal. Tell me again, as succinctly as you can in 48 seconds, why this was harmless. Because there was significantly more. Beyond a reasonable doubt. Sure. Right? Tough standard. It is. Because there was significantly more evidence, both quantity and the amount of time spent during the evidence production and during closing on other pieces of evidence, especially, as I mentioned, the vehicle, the ways it was running or not running, the value and the inconsistencies and unbelievability of the defendant's case and his witnesses, especially his mother and Felipe Sanchez. Thank you. Thank you. All right. Thank you very much. Very briefly, two quick points. To answer Judge Wynn's question, with the Confrontation Clause analysis, we do look at it from the perspective of the witness. And in United States v. Morales, I believe it lays out, this is at 720F3rd at 1200. The primary purpose analysis is objective and focuses on the primary purpose reasonable participants would have had as ascertained from the individual statements and actions and the circumstances in which the encounter occurred. And given all the circumstances here that she made this statement more than a month after the marijuana was discovered and also after she received the transfer of liability document, it's pretty clear she would have reasonably expected it would be used in criminal litigation. Could you address the harmless? Yes. I think Foster really answers this question, as we were discussing earlier. And we cited in our briefs 227F3rd, 1096. That was a case where it was a border bust, where the marijuana was discovered in the vehicle. The vehicle wasn't registered to him. He was the driver and sole occupant of the vehicle. And in that case, because that impeachment of his testimony severely undermined the defense case, it certainly was not harmless. And that was under the more probable than not standard. As Judge Zahauri pointed out, we're dealing, if it's the Confrontation Clause issue, we're dealing with harmless beyond a reasonable doubt. Liera also was more probable than not. Here we're dealing with harmless beyond a reasonable doubt. It's the government's burden to prove that. And so if it's the Confrontation issue, it's definitely, definitely not harmless, but it also is not harmless on the hearsay issue as well. Thank you. All right. Thank you very much. Thank you both. Your argument has been very helpful. The matter stands submitted for decision by the Court. Thank you.
judges: Zouhary, Schroeder, Nguyen